Receipt number AUSFCC-6617318

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| 1.   Ryan Alkire | ) |
| | ) |
| 2.   Jason Aul | ) |
| | ) |
| 3.   Kyle Barker | ) |
| | ) |
| 4.   Clint Berg | ) |
| | ) |
| 5.   Ian Biasillo | ) |
| 6.   Erick Boeber | ) |
| | ) |
| 7.   Rachel Bylund | ) |
| | ) |
| 8.   Lanny Carey | ) |
| | ) |
| 9.   Leobardo Dominguez | ) |
| | ) |
| 10.  Joshua Easley | ) |
| | ) |
| 11.  Jay Elidechedong | ) |
| | ) |
| 12.  Lynsey Freelove | ) |
| | ) |
| 13.  Pedro Garcia | ) |
| | ) |
| 14.  Kayla Greene | ) |
| | ) |
| 15.  Chad Gustafson | ) |
| | ) |
| 16.  Chad Hamilton | ) |
| | ) |
| 17.  Jamie Hansen | ) |
| | ) |
| 18.  Frank Hawkins | ) |
| | ) |
| 19.  Cody Huntingon | ) |
| | ) |
| 20.  David Ilten | ) |
| | ) |
| 21.  Darryl Jacobs | ) |
| | ) |
| 22.  Jolynn Kelleher | ) |
| | ) |
| 23.  Nicholas Kendryna | ) |

```
                                      )
24.  George Kessler                   )
                                      )
25.  Adam Leonard                     )
                                      )
26.  Matthew Little                   )
                                      )
27.  Lucian Lucero                    )
                                      )
28.  Glenn Luedecke                   )
                                      )
29.  Tiffany Manzanares               )
                                      )
30.  Cesar Martinez                   )
                                      )
31.  Dace McCartney                   )
                                      )
32.  William McGhee                   )
                                      )
33.  Tiffany Roberts                  )
                                      )
34.  Bobby Root                       )
                                      )
35.  Dwayne Sample                    )
                                      )
36.  Seth Thomas                      )
                                      )
37.  Michael Warmbrodt                )
                                      )
38.  Richard White                    )
                                      )                    20-1654 C
39.  Christopher Whittemore           )
                                      )
       Plaintiffs,                    )
                                      )     Case No. _____
     v.                               )     (Judge _____)
                                      )
THE UNITED STATES,                    )
                                      )
       Defendant.                     )
_____      )
```

## **COMPLAINT**

1.      The plaintiffs are current and former employees of the defendant United States

2

Government at the U.S. Department of Justice, Bureau of Prisons, at the Federal Correctional Institution ("FCI") Herlong (hereinafter, "Institution" or "FCI Herlong") in Herlong, CA. Plaintiffs bring this action against the defendant on behalf of themselves and other employees similarly situated for a declaratory judgment, back pay, and other relief, pursuant to 28 U.S.C. § 1346(a)(2), 28 U.S.C. §§ 1491, 2201 and 2202, 5 U.S.C. § 5596, the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207, and 29 U.S.C. § 216(b), to remedy the willful and unlawful violations of federal law complained of herein.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(a)(2), 28 U.S.C. § 1491, and 29 U.S.C. § 216(b). Venue is proper pursuant to 28 U.S.C. § 1402.

## PARTIES

3.      Each of the plaintiffs in this action is, or has been, an "employee" within the meaning of Title 5 of the U.S. Code, specifically 5 U.S.C. §§ 2105, 5102, and 5041, and within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(e)(1).

4.      Each of the plaintiffs is a current or former correctional worker employed by the United States Department of Justice, Bureau of Prisons, at FCI Herlong in Herlong, California. They have given their written consent to be party plaintiffs in this action pursuant to 29 U.S.C. § 216(b). The consent to sue forms are attached as Exhibit A. These written consent forms set forth each plaintiff's name and home address.

5.      Defendant United States is, and at all material times has been, an employer under Title 5 of the U.S. Code, specifically 5 U.S.C. §§ 5102 and 5541. Defendant United States also is, and at all material times has been, a "public agency" and "employer" within the meaning of the FLSA, 29 U.S.C. § 203(x) and § 203(d). Defendant employs, or has employed, the plaintiffs and

other employees in similar activities and has its principal place of business in Washington, D.C.

**FACTS**

6.     At all times material herein, plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq*.

7.     At all times material herein, plaintiffs have worked in excess of the hourly levels specified in the FLSA, 29 U.S.C. § 207, and, as a result, at all times material herein have been entitled to overtime compensation at a rate of not less than one and one-half times their regular rate of pay for all the hours or work in excess or 8 hours in a work day and/or in excess of 40 in a workweek.

8.     The Institution is a medium security correctional facility that houses over 950 male inmates who have been convicted of federal crimes, including violent offenders, drug dealers, rapists, murderers, and gang members.

9.     The Institution is staffed 24 hours per day, 365 days per year by correctional officers, including plaintiffs. The correctional officers' primary job duty is to maintain the safety and security of the Institution, staff and inmates. They are charged with performing this job duty every moment that they are within the Institution from the moment they begin screening prior to their shifts until they exit the Institution after their shifts end. The plaintiffs perform their primary job duty by, among other things, maintaining constant vigilance to ensure that nothing out of the ordinary is occurring, immediately addressing any safety or security issues that they see no matter the location and time of day that it occurs, including before their paid shifts begin and after they end.

10.    Plaintiffs are assigned to posts within the Institution. Most of the posts are staffed for 16 or 24 hours per day, although some are staffed for only 8 hours per day. The defendant

maintains each plaintiff's daily assignment going back to the plaintiff's first assignment within the Institution. Accordingly, the defendant knows exactly which post and shift each plaintiff has been assigned to on a daily basis going back at least three years from today.

11.      When a post is staffed for 16 or 24 hours per day, the defendant assigns a correctional officer to the post for a scheduled paid shift of 8 hours. For a 24-hour post, there are three 8-hour paid shifts daily, often referred to as Morning Watch, Day Watch, and Evening Watch.

12.      For a 16-hour post, there are two 8-hour paid shifts daily. These 8-hour shifts correspond to shift times for the 24-hour posts on Day Watch and Evening Watch.

13.      For the 16-hour and 24-hour posts, plaintiffs perform more than 8 hours and 10 minutes of work each day because the plaintiffs perform work both before their scheduled paid start time and/or after the end of their scheduled paid shifts.

14.      Defendant does not compensate plaintiffs for the time that plaintiffs spend performing daily work outside of their regularly scheduled 8-hour shifts. At all times material herein, defendant has suffered or permitted plaintiffs to work at least 15-30 minutes each shift, and sometimes more, before and after their scheduled shift times without compensating plaintiffs for this work time.

15.      24-hour posts worked by plaintiffs at the Institution include, but are not limited to: Compound 1; Compound 2; Control Center 1; A-side and C-side Housing Units, Special Housing Unit 1; and Special Housing Unit 2. In addition, since on or around March 2020, Housing Unit Reno-D—which is being used as a COVID-19 unit to quarantine inmates who have tested positive for COVID-19—has been staffed on a 24-hour basis.

16.      16-hour posts worked by plaintiffs include but are not limited to: Control Center 2; B-side and D-side Housing Units; Special Housing Unit 3; Special Housing Unit 4.

17.     Defendant maintains employment records for all plaintiffs, as well as daily assignment cards reflecting the shifts and posts worked each day by each plaintiff who has opted-in to this action dating back to at least November 23, 2017.

18.     There is no scheduled overlap for the three 8-hour shifts on the 24-hour posts. The Day Watch shift is from 6:00 a.m. to 2:00 p.m.; Evening Watch is from 2:00 p.m. to 10:00 p.m.; and Morning Watch is from 10:00 p.m. to 6:00 a.m. The plaintiffs are required to be on their assigned posts, in uniform and with all assigned equipment and pertinent post information, by the scheduled start of their shift. Failure to meet this requirement subjects the plaintiffs to discipline.

19.     The 16-hour posts are filled during Day Watch and Evening Watch. Day Watch is from 6:00 a.m. to 2:00 p.m., and Evening Watch is from 2:00 p.m. to 10:00 p.m. There is no scheduled overlap. The plaintiffs are required to be on their assigned posts, in uniform and with all assigned equipment and pertinent post information, by the scheduled start of their shift. Failure to meet this requirement subjects the plaintiffs to discipline.

20.     Defendant has deprived the plaintiffs of overtime compensation by failing to compensate them for the time that defendant has suffered or permitted them to spend engaged in pre-shift activities, including but not limited to the work activities described in paragraphs 21-27 below, which must be performed on Institution premises.

21.     On a daily basis, prior to March 2020 and the COVID-19 pandemic, plaintiffs began their unpaid pre-shift work when they started the process of clearing the staff screening site in the lobby of the Institution. Clearing the screening site is intrinsic, integral and indispensable to the plaintiffs' principal activities, and is in fact their primary job duty, because, among other things, in performing this task, plaintiffs ensure that no contraband enters the Institution, thereby ensuring the safety and security of the Institution, staff and inmates. Plaintiffs cannot dispense with this

activity if they are to perform their primary job duties of safety and security, which include the primary duty of assuring that no contraband enters the Institution. Without completing the mandatory staff security screening, cell phones and other contraband could enter the Institution which would put the staff, inmates and Institution at risk of security breaches.

22.     The compensable (but unpaid) workday continues when plaintiffs collect and don their duty belts and other required equipment after clearing the staff screening site, including required metal chains and chits. The chains are essential to fasten keys. The Institution has multiple post orders regarding the necessity of securing keys by metal chain to one's duty belt to ensure that keys do not end up in the hands of inmates. The metal chits, which must also be collected after the plaintiffs clear the upright metal detector contain the names of the officers and are required to access and account for important equipment from radios, to keys, to cutdown tools. Retrieving and donning the duty belt, metal chains, and chits must be performed on defendant's premises after clearing the screening site because the plaintiffs cannot wear their duty belts and metal chains as they walk through the upright metal detector without sounding the alarm.

23.     Collecting and donning equipment on the employer's premises is compensable work but unpaid at the Institution. Collecting and donning equipment is intrinsic, integral and indispensable to the plaintiffs' principal activities, and is in fact their primary job duty, because, among other things, in performing these tasks, the plaintiffs ensure the safety and security of the Institution, staff, and inmates by ensuring that their keys and other equipment can be affixed to their person and secured from the reach of inmates. They must collect the chits at the screening site so that they can access necessary equipment in the Institution including cut down tools, radios, and keys. Plaintiffs cannot dispense with collecting and donning their screened duty belts, chains, and chits if they are to perform their primary job duty of ensuring the safety and security of the

Institution, inmates, and staff.

24.     Since the start of the COVID-19 pandemic in March 2020, plaintiffs have begun their daily pre-shift work *prior to* clearing the staff screening site. Plaintiffs begin working upon entering the front lobby, where they are immediately stopped and required to participate in a health screening before continuing on to the metal detector and screening site. The health screening consists of, among other things, a temperature check and a written questionnaire regarding their health status and symptoms. After completing the mandatory health screening, the plaintiffs continue their compensable (but unpaid) pre-shift activities by clearing the staff screening site and performing the compensable work activities described in Paragraph 21-23. Undergoing this mandatory health screening is intrinsic, integral and indispensable to the plaintiffs' principal activities because, among other things, in performing this task the plaintiffs ensure the safety and security of the Institution, staff and inmates by assuring that the highly contagious novel coronavirus does not enter the Institution and infect inmates or staff. Plaintiffs cannot dispense with this activity if they are to perform their primary job duty of ensuring the safety and security of the Institution, inmates, and staff.

25.     Regardless of the post they are assigned to within the Institution, after they complete the mandatory health screening, clear the staff screening site, and collect and don their duty belt and other equipment, each plaintiff continues to perform pre-shift work activities as part of the continuous workday for which they are not paid. For example, for 16-hour posts, the plaintiffs must obtain equipment or paperwork from the Control Center. In addition, for all posts, the plaintiffs perform their primary duty of safety and security of the Institution on the way to their assigned posts inside the secure confines of the Institution because they, at all times, remain vigilant, alert, and ready to respond to—and do respond to—emergencies. They perform these pre-

shift tasks without pay.

26.     After donning their duty belts and being visually identified by the appropriate Control Center officer, each plaintiff must flip their accountability chit and clear the front lobby sally port. After clearing the front lobby sally port, the plaintiffs walk down an outdoor walkway and clear a locked slider gate leading onto the Institution's outdoor compound. Once the plaintiffs clear the slider, the plaintiffs are locked inside the Institution with the inmates with no control over the sally port doors. Flipping the accountability chit and clearing both the sally port and slider gate are intrinsic, integral and indispensable to the plaintiffs' principal activities, and is in fact their primary job duty, because, among other things, in performing these tasks the plaintiffs ensure the safety and security of the Institution, staff and inmates by assuring that only authorized individuals enter the secured confines of the Institution and that the employees in the Control Center and management know exactly who is inside the Institution at all times. Plaintiffs cannot dispense with these activities if they are to perform their primary job duty of ensuring the safety and security of the Institution.

27.     Plaintiffs continue to perform unpaid security work after clearing the slider and while walking to their posts inside the secure confines of the Institution. First, the plaintiffs go into the Lieutenants' office to check in with a supervisor and discuss any pertinent information from the previous tour. Then, while walking to their posts, the plaintiffs observe and correct inmate behavior, respond to inmate questions, check for security breaches in the perimeter fence and elsewhere in the Institution, check for contraband, run to locations where body alarms sound, and respond to other emergencies as they arise. While performing these activities, plaintiffs are in uniform and identifiable to the inmates as on-duty correctional officers. Performing these activities are intrinsic, integral and indispensable to the plaintiffs' principal activities, and are in fact their

primary job duties, because, among other things, in performing these tasks, the plaintiffs ensure the safety and security of the Institution by removing contraband from the Institution, and ensuring inmates are orderly and are, at all times, following the Institution's rules. In correcting inmate infractions and responding to emergencies prior to their shifts, the plaintiffs assist in de-escalating dangerous incidents involving inmates or staff. Plaintiffs cannot dispense with these activities if they are to perform their primary job duty of ensuring the safety and security of the Institution, inmates and staff.

28.    Once the plaintiffs arrive at their posts inside the Institution, they continue to perform unpaid work as they inspect, account for, and exchange equipment, including radios, batteries, keys, and OC pepper spray, with the outgoing correctional officer assigned to that post. The plaintiffs also perform a vital (but unpaid) information exchange with the outgoing correctional officer about any security events that occurred the previous shift so that the oncoming correctional officers have all the important information they need to maintain security of the inmates, staff, and post during their shift. Performing the exchange is intrinsic, integral and indispensable to the plaintiffs' principal activities, and are in fact their primary job duty, because, among other things, in performing these tasks on their assigned posts, the plaintiffs ensure the safety and security of the Institution by collecting and donning additional security equipment from the off-going officer that they need for their shifts (e.g., radios, batteries, OC spray, and keys). The plaintiffs cannot do their jobs without this equipment. For example, they need the radio to communicate with other officers, the lieutenants, and the Control Center concerning important security information and inmate counts. The radio also contains the body alarm which they need to sound to notify the Control Center if there is an emergency. Likewise, the plaintiffs cannot perform their jobs without the information exchange—this this is when the oncoming officer learns

about significant security incidents on the prior shift and about inmates who may need specific monitoring during the shift, which will enable the plaintiffs to maintain the Institution's safety and security. Plaintiffs cannot dispense with performing the exchange of equipment and information if they are to perform their primary job duty of ensuring the safety and security of the Institution, inmates, and staff.

29.   While two officers engage in this information and equipment exchange with each other on each post (i.e., the oncoming and outgoing officer), only one officer is paid for this work time because there is no scheduled paid overlap to the shifts even though there is, in fact, an overlap to the shifts.

30.   In addition, since March 2020 in housing units being used as COVID-19 units, plaintiffs don personal protective equipment and sanitize their unit's shared plastic face shield prior to assuming the duties of the post and while on unpaid time. Plaintiffs cannot dispense with these tasks if they are to perform their primary job duty of ensuring the safety and security of the Institution, inmates, and staff.

31.   Defendant has also deprived the plaintiffs of overtime compensation by failing to compensate them for the time that defendant has suffered or permitted them to engage in post-shift activities, all of which must be performed on Institution premises. These activities include, but are not limited to, exchanging information and equipment on the assigned post with oncoming staff, remaining vigilant, alert, and ready to respond to emergencies while within the secured confines of the Institution after they leave their post, observing and correcting inmate behavior, looking for contraband, responding to body alarms and other emergencies, and returning equipment to the Control Center. These activities are all part of the continuous workday and are compensable, but they are unpaid at the Institution. Performing these activities are intrinsic, integral and

indispensable to the plaintiffs' principal activities, and are in fact their primary job duties, because, among other things, in performing these post-shift tasks on the Institution's premises, plaintiffs ensure the safety and security of the Institution by ensuring that inmates are orderly and are, at all times, following the Institution's rules, and that dangerous incidents involving inmates are de-escalated quickly. Plaintiffs cannot dispense with these activities if they are to perform their primary job duty of ensuring the safety and security of the Institution.

32.     Exactly like the pre-shift unpaid walk from the Control Center to the assigned post, during the post-shift walk back to the Control Center, plaintiffs cannot simply pass by an inmate who is violating the Institution's rules, or ignore an inmate's questions. During this walk to and from the post, plaintiffs are locked inside the Institution, unarmed, in uniform, and identifiable to all inmates, including violent offenders and gang members, as correctional officers.  As such, they must perform the safety and security work of a correctional officer during this time. Indeed, plaintiffs are subject to the Institution's post orders and code of conduct during this time. This time is no ordinary commute.

33.     Plaintiffs are required to, and do, respond to emergencies, including violent fights between inmates, within the Institution on unpaid time when such emergencies occur while they are walking to their posts prior to their shifts, or while they are walking from their posts back to the Control Center after their shifts. Plaintiffs are also required to respond to such emergencies while on paid time. Failure to respond to an emergency results in discipline up to and including termination. Responding to emergencies is intrinsic, integral and indispensable to the plaintiffs' principal activities, and is in fact their primary job duty, because, among other things, in performing this task the plaintiffs ensure the safety and security of the Institution in de-escalating dangerous incidents and preventing physical injury or harm to inmates and staff. Plaintiffs cannot

dispense with this activity if they are to perform their primary job duty of ensuring the safety and security of the Institution, staff, and inmates.

34.     While the 16-hour and 24-hour correctional officer posts are primarily staffed with correctional officers, due to staff shortages, non-custody correctional workers are often "augmented" to cover correctional officer posts. Non-custody positions include, but are not limited to, workers assigned to food services, unit counselors, and correctional services officers.

35.     When non-custody workers are augmented and assigned to a correctional officer post, the non-custody workers perform the same unpaid work duties as correctional officers and arrive and depart at the same time that correctional officers working the same shift on the same post would. Thus, plaintiffs who are non-custody workers have been suffered or permitted to perform the same unpaid work daily, as described above, to maintain the safety and security of the Institution. However, similar to the custody worker plaintiffs, defendant only compensated non-custody worker plaintiffs for their scheduled hours of work and did not compensate them for their pre-shift or post-shift work when they worked on a correctional officer post. Plaintiffs' assignment rosters identify each shift that they worked on a custody post at issue.

## COUNT I

### FAILURE TO PROPERLY COMPENSATE EMPLOYEES FOR
### THE ENTIRE CONTINUOUS WORKDAY

36.     Plaintiffs hereby incorporate by reference Paragraphs 1 through 35 in their entirety.

37.     Section 7(a) of the FLSA, 29 U.S.C. § 207(a), provides that an employer shall compensate its employees at a rate not less than one and one-half times their regular rate for each hour employed in excess of 40 hours per week. In addition, Section 551.501 of Part 5 of the Code of Federal Regulations, 5 C.F.R. § 551.501, provides that federal agency employers such as the Bureau of Prisons, shall compensate their employees at a rate of not less than one and one-half

times the employees' regular rate of pay for all hours of work in excess of 8 in a day and/or 40 in

a workweek. At all or some of the times material herein, plaintiffs have been entitled to FLSA

overtime pay for all hours of work in excess of eight (8) in a day and/or forty (40) in a workweek.

38.     For federal employees such as plaintiffs, time spent in a paid, nonwork status, such

as holiday, paid leave, compensatory time off, and excused absences, is considered "hours of

work" for purposes of calculating overtime entitlement. 5 C.F.R. § 551.401(c).

39.     At all or some of the times material herein, and since November 23, 2017, the

plaintiffs have worked for defendant at FCI Herlong. At all times material herein, each of the

plaintiffs has worked hours in excess of forty (40) hours per week and/or eight (8) hours a day. In

addition, at all times material herein, each of the plaintiffs has performed uncompensated pre-shift

and/or post-shift work.

40.     At all times material herein, plaintiffs have been entitled to be compensated with

overtime pay for time spent performing work prior to their paid shift start times. The defendant,

however, has failed to count as work the pre-shift tasks that plaintiffs regularly perform outside of

their paid shift times, including the time that plaintiffs spend undergoing mandatory health

screenings, clearing the required staff screening sites, picking up and donning equipment, security

work performed while crossing the Institution's compound or while walking to their assigned post,

and completing a shift exchange with an outgoing correctional officer.

41.     At all times material herein, plaintiffs have been entitled to be compensated with

overtime pay for time spent performing work after the end of their scheduled paid shift. The

defendant, however, has failed to count as work the post-shift tasks that plaintiffs have performed

outside of their paid shift times including the time that plaintiffs spend completing a shift exchange

with the oncoming correctional officer following their shift, security work performed while

crossing the Institution's compound walking back to the Control Center, and accounting for and returning equipment at the Control Center.

42.     Because the defendant has failed to count as compensable work time the required pre-shift and post-shift tasks, the plaintiffs have not been compensated for all hours of work as required by the FLSA.

43.     By failing and refusing to pay the plaintiffs the overtime pay required under law, the defendant has violated, and is continuing to violate in a willful and intentional manner, the provisions of the FLSA. As a consequence, at all times material herein, the plaintiffs have been unlawfully deprived of overtime compensation and other relief for the maximum statutory period allowed under federal law.

44.     As a result of the defendant's willful and purposeful violations of the FLSA and Title 5, there have become due and owing to each of the plaintiffs various amounts that have not yet been precisely determined. The employment and work records for each plaintiff are in the exclusive possession, custody and control of defendant and its public agencies and the plaintiffs are unable to state at this time the exact amounts owing to each of them. Defendant and its public agencies are under a duty imposed by the Government Accounting Office retention schedule, 29 U.S.C. §211(c), and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to plaintiffs from which the amounts of defendant's liability can be ascertained.

45.     Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover backpay, and liquidated damages in an amount equal to their backpay damages, for the defendant's failure to pay overtime compensation in compliance with the FLSA.

46.     Pursuant to the Back Pay Act, 5 U.S.C. § 5596, plaintiffs are entitled to recover

interest on their backpay damages for the defendant's failure to pay them overtime compensation.

47.    Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b), the Back Pay Act, 5 U.S.C. § 5596, as well as other applicable laws and regulations.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs, on their own behalf and on behalf of all others similarly situated, pray that this Court:

(a) Enter judgment declaring that the defendant has willfully and wrongfully violated its statutory obligations, and deprived each of the plaintiffs of their rights under the FLSA and Title 5;

(b) Order a complete and accurate accounting of all the compensation to which the plaintiffs are entitled;

(c) Award each plaintiff monetary damages, including backpay and liquidated damages equal to their unpaid compensation, plus interest;

(d) Award plaintiffs their reasonable attorneys' fees to be paid by the defendant, and the costs and disbursements of this action; and

(e) Grant such other relief as may be just and proper.

Dated: November 23, 2020                    Respectfully submitted,

                                            */s/ Molly A. Elkin*
                                            Molly A. Elkin
                                            McGILLIVARY STEELE ELKIN LLP
                                            1101 Vermont Avenue, N.W.
                                            Suite 1000
                                            Washington, D.C. 20005
                                            Phone: (202) 833-8855
                                            Fax: (202) 452-1090
                                            mae@mselaborlaw.com

                                            *Counsel of Record for Plaintiffs*

16

Sarah M. Block
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Avenue, N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
Fax: (202) 452-1090
smb@mselaborlaw.com

*Of Counsel for Plaintiffs*