**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **RYAN ALKIRE,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **No. 20-1654 C** |
| | ) | **(Judge Schwartz)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

<u>**DEFENDANT'S MOTION TO DISMISS**</u>

BRIAN M. BOYNTON
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:

JAMES SELLARS
Assistant General Counsel
U.S. Department of Justice
Federal Bureau of Prisons
Employment Law Branch
3800 Camp Creek Parkway
Bldg 2000
Atlanta, GA 30331

BRET R. VALLACHER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 616-0465
Facsimile: (202) 305-2062
bret.r.vallacher@usdoj.gov

March 1, 2021

Attorneys for Defendant

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

STATEMENT OF THE CASE ....................................................................................... 2

STATEMENT OF THE ISSUES ................................................................................... 3

ARGUMENT .................................................................................................................. 3

  I.     Legal Standard ............................................................................................... 3

  II.    Plaintiffs Have Failed To State A Claim For Relief Under The FLSA .......................... 4

    A.   The FLSA Authorizes Overtime Pay Only For Integral And Indispensable Activities That Exceed The *De Minimis* Threshold ........................ 4

    B.   Plaintiffs' Claim for Overtime Compensation For Pre- And Post-Shift Activities Fails As A Matter Of Law .................................................. 7

       1.   COVID-19 Screening ........................................................................ 9

       2.   Security Screening .......................................................................... 11

       3.   Donning The Duty Belt, Chains, And Chits ................................... 14

       4.   Clearing Sally Port And Slider Gate And Flipping Their Accountability Chit ...... 15

       5.   Walking To Plaintiffs' Duty Posts .................................................. 17

       6.   Equipment and Information Exchange ............................................ 22

       7.   Walking To The Exit Of The Institution ........................................ 24

  III.   Plaintiffs Fail to State a Claim for Relief Under the Back Pay Act .............................. 25

  IV.   The Court Cannot As a Matter of Law Grant the Declaratory Relief Plaintiffs Request ...... 25

CONCLUSION ............................................................................................................. 26

TABLE OF AUTHORITIES

Cases

*Agner v. United States*,
　　8 Cl. Ct. 635 (1985) ............................................................................ 21

*Aguilar v. Management & Training Corporation*,
　　948 F.3d 1270 (10th Cir. 2020) ......................................................... 13

*Akpeneye v. United States*,
　　138 Fed. Cl. 512 (2018) ............................................................... 5, 6, 19

*Akpeneye v. United States*,
　　146 Fed. Cl. 356 (2019) .......................................................................... 6

*Allen v. Atl. Richfield Co.*,
　　724 F.2d 1131 (5th Cir. 1984) ............................................................. 20

*Anderson v. Mt. Clemens Pottery Co.*,
　　328 U.S. 680 (1946) ..................................................................... 4, 6, 17

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009) ......................................................................... 9, 24

*Babcock v. Butler County*,
　　806 F.3d 153 (3d Cir. 2015) ................................................................ 20

*Bankers Tr. N.Y. Corp. v. United States*,
　　225 F.3d 1368 (Fed. Cir. 2000) .......................................................... 20

*Barefield v. Vill. of Winnetka*,
　　81 F.3d 704 (7th Cir. 1996) ................................................................ 20

*Baylor v. United States*,
　　198 Ct. Cl. 331 (1972) ........................................................................ 20

*Bishop v. United States*,
　　74 Fed. Cl. 144 (2006) ................................................................... 22, 24

*Bonilla v. Baker Concrete Constr., Inc.*,
　　487 F.3d 1340 (11th Cir. 2007) .......................................................... 18

*Bradley v. Chiron Corp.*,
　　136 F.3d 1317 (Fed. Cir. 1998).................................................... *passim*

*Carlsen v. United States*,
   72 Fed. Cl. 782 (2006) .................................................................... 2, 23, 24

*Carlsen v. United States,*
   521 F.3d 1371 (Fed. Cir. 2008) .............................................................. *passim*

*Corman v. JWS of N.M., Inc.*,
   356 F. Supp. 3d 1148 (D.N.M. 2018) ............................................................ 18

*Federal Bureau of Prisons & AFGE Local 720*,
   58 F.L.R.A. 327 (2003) .................................................................... 14, 16

*Federal Bureau of Prisons & AFGE Local 1242*,
   68 F.L.R.A. 857 (2015) .......................................................................... 21

*Federal Bureau of Prisons & AFGE Local 3828*,
   69 F.L.R.A. 176 (2016) .................................................................... 15, 16

*Ghaffari v. United States*,
   125 Fed. Cl. 665 (2016) .................................................................... 25, 26

*Gorman v. Consol. Edison Corp.*,
   488 F.3d 586 (2d Cir. 2007) .................................................................... 18

*Harris v. Boston*,
   253 F. Supp. 2d 136 (D. Mass. 2003) ........................................................... 21

*Haviland v. Cath. Health Initiatives-Iowa, Corp.*,
   729 F. Supp. 2d 1038 (S.D. Iowa 2010) ......................................................... 21

*Henderson v. Cuyahoga Cnty.*,
   1:20 CV 1351, 2020 WL 5706415 (N.D. Ohio Sept. 24, 2020) ...................................... 14

*Henson v. Pulaski Cnty. Sheriff*,
   6 F.3d 531 (8th Cir. 1993) .................................................................... 21

*IBP, Inc. v. Alvarez*,
   546 U.S. 21 (2005) ............................................................................ 17

*Integrity Staffing Sols., Inc. v. Busk*,
   574 U.S. 27 (2014) ....................................................................... *passim*

*Joiner v. Bd. of Trs. of Flavius J. Witham Mem. Hosp.*,
   No. 1:13-CV-555-WL-DKL, 2014 WL 3543481 (S.D. Ind. July 17, 2014) ............................ 21

*Kam-Almaz v. United States*,
   682 F.3d 1364 (Fed. Cir. 2012) ................................................................. 4

*Mertz v. Wisc. Dep't of Workforce Dev.*,
 365 Wis. 2d 607, 2015 WL 6181046 (Wis. App. 2015)....................................... 18, 19

*Refaei v. United States*,
 129 Fed. Cl. 1 (2016) ............................................................................................ 25

*Riggs v. United States*,
 21 Cl. Ct. 664 (1990) .............................................................................................. 6

*Rowe v. United States*,
 151 Fed. Cl. 268 (2020) ........................................................................................... 3

*Roy v. County of Lexington*,
 141 F.3d 533 (4th Cir. 1998) ................................................................................ 20

*Shell Oil Co. v. United States*,
 148 Fed. Cl. 781 (2020) ........................................................................................... 4

*Spagnola v. Stockman*,
 732 F.2d 908 (Fed. Cir. 1984)............................................................................... 25

*United Pac. Ins. Co. v. United States*,
 464 F.3d 1325 (Fed. Cir. 2006)............................................................................... 3

*United States v. Connolly*,
 716 F.2d 882 (Fed. Cir. 1983)............................................................................... 25

*United States v. King*,
 395 U.S. 1 (1969).................................................................................................. 25

*Whalen v. United States*,
 93 Fed. Cl. 579 (2010) ...................................................................................*passim*

## Statutes & Regulations

5 U.S.C. § 5596............................................................................................*passim*

28 U.S.C. § 2201..........................................................................................*passim*

28 U.S.C. § 2202.................................................................................... 25, 26

29 U.S.C. § 251(a) ............................................................................................ 4

29 U.S.C. § 254................................................................................... 1, 5, 17

29 U.S.C. §§ 201–219 ...................................................................................... 1

29 U.S.C. §§ 251–262.................................................................................................. 1

5 C.F.R. § 551.412.................................................................................................. 2, 6

29 C.F.R. § 790.7.................................................................................................. 18, 19

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| RYAN ALKIRE, *et al.*,    ) | |
|    ) | |
|    Plaintiffs,    ) | |
|    ) | |
| v.    ) | No. 20-1654 C |
|    ) | (Judge Schwartz) |
| THE UNITED STATES,    ) | |
|    ) | |
|    Defendant.    ) | |
|    ) | |
| _____   ) | |

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests the Court to dismiss the complaint (ECF No. 1) because it fails to state a claim.  In support of this request, we rely upon the complaint and the following brief.

## INTRODUCTION

Plaintiffs, 40 current or former correctional workers at the Federal Correctional Institution Herlong ("FCI Herlong") near Herlong, California, contend that they are owed overtime pay under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219, (FLSA), and the Back Pay Act, 5 U.S.C. § 5596, for the time that they allegedly spent engaged in various pre-shift and post-shift activities.  These activities include undergoing routine COVID-19 and security screenings, traveling from the entrance of the facility to their duty posts, exchanging equipment, and traveling from their duty posts back to the entrance of the facility.  *See* Compl. ¶¶ 21–33.

Plaintiffs are not entitled to payment for these activities in light of the Portal-to-Portal Act, 29 U.S.C. §§ 251–262, implementing regulations, and clearly established caselaw. Specifically, plaintiffs have not plausibly alleged that any of these preliminary and postliminary activities are both "integral and indispensable" to the work that they are "employed to perform," *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 32–33 (2014) (citing 29 U.S.C. § 254(a)), and

exceed the 10-minute *de minimis* threshold, *Carlsen v. United States*, 72 Fed. Cl. 782, 798

(2006) ("the agency is not obligated to pay overtime when this work takes ten minutes or less"),

*aff'd*, 521 F.3d 1371 (Fed. Cir. 2008), *as corrected on reh'g* (Apr. 29, 2008).

## STATEMENT OF THE CASE

The complaint alleges only one count, "failure to properly compensate employees for the

entire continuous workday," Compl. at 13, which is premised on the FLSA and its implementing

regulations. *Id*. at ¶¶ 37–38.  In implementing the FLSA, the Office of Personnel Management

(OPM), promulgated a binding Government-wide regulation with respect to preparatory or

concluding activities, which states:

> (a)(1) If an agency reasonably determines that a preparatory or
> concluding activity is **closely related to an employee's principal
> activities**, and is **indispensable to the performance of the
> principal activities**, and **that the total time spent in that activity
> is more than 10 minutes** per workday, the agency shall credit all
> of the time spent in that activity, including the 10 minutes, as hours
> of work. . . .
>
> (b) A preparatory or concluding activity that is not closely related
> to the performance of the principal activities is considered a
> preliminary or postliminary activity.  **Time spent in preliminary
> or postliminary activities is excluded from hours of work and is
> not compensable**, even if it occurs between periods of activity that
> are compensable as hours of work.

5 C.F.R. § 551.412 (emphasis added).

In addition to their FLSA claim, plaintiffs allege that they are entitled to relief under the

Back Pay Act (BPA), 5 U.S.C. § 5596, and Declaratory Judgment Act, 28 U.S.C. §§ 2201-2.

Compl. ¶¶ 1, 46–47.  The BPA, in relevant part, reads,

> An employee of an agency who . . . is found by appropriate
> authority under applicable law, rule, regulation, or collective
> bargaining agreement, to have been affected by an unjustified or
> unwarranted personnel action which has resulted in the withdrawal
> or reduction of all or part of the pay, allowances, or differentials of
> the employee— (A) is entitled, on correction of the personnel
> action, to receive for the period for which the personnel action was

> in effect— (i) an amount equal to all or any part of the pay,
> allowances, or differentials, as applicable which the employee
> normally would have earned or received during the period if the
> personnel action had not occurred . . .

5 U.S.C. § 5596(b)(1).  The Declaratory Judgment Act, in relevant part, provides that in "a case of

actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an

appropriate pleading, may declare the rights and other legal relations of any interested party

seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.

## STATEMENT OF THE ISSUES

1.      Whether plaintiffs have failed to state a claim under the FLSA for time spent on

activities before and after their shifts in light of the Portal-to-Portal Act's clear prohibition on

compensation for such preliminary/postliminary activities, and in light of binding regulations

providing that 10 minutes or less of work per day is *de minimis* and thus non-compensable?

2.      Whether plaintiffs' BPA claim fails because the FLSA claim fails?

3.      Whether this Court lacks the ability to grant the declaratory relief plaintiffs seek?

## ARGUMENT

### I.    Legal Standard

"It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) 'when the

facts asserted by the claimant do not entitle him to a legal remedy.'"  *Rowe v. United States*, 151

Fed. Cl. 268, 271 (2020) (quoting *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir.

2002)).  In reviewing a motion to dismiss for failure to state a claim, the Court "must assume all

well-pled factual allegations are true and indulge in all reasonable inferences in favor of the

nonmovant."  *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006)

(citation omitted).

However, conclusory statements of law or fact "are not entitled to the assumption of

truth" and "must be supported by factual allegations."  *Shell Oil Co. v. United States*, 148 Fed.

Cl. 781, 788 (2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Accordingly, "naked

assertions devoid of further factual enhancement are insufficient to state a claim."  *Id.*  (internal

quotation marks omitted); *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir.

1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to

support a claim.").  The factual allegations plead must also plausibly suggest, not merely be

consistent with, a showing of entitlement to relief and the facts as alleged must be enough to

raise a right to relief above the speculative level.  *See Kam-Almaz v. United States*, 682 F.3d

1364, 1367–68 (Fed. Cir. 2012).

## II.   Plaintiffs Have Failed To State A Claim For Relief Under The FLSA

### A.  The FLSA Authorizes Overtime Pay Only For Integral And Indispensable Activities That Exceed The *De Minimis* Threshold

After the FLSA was enacted in 1938, the Supreme Court defined "work" as "physical or

mental exertion (whether burdensome or not) controlled or required by the employer and pursued

necessarily and primarily for the benefit of the employer and his business."  *Integrity Staffing*,

574 U.S. at 31 (quoting *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local 123*, 321 U.S. 590, 598

(1944)).  The Supreme Court further interpreted the FLSA to require compensation for "all time

during which an employee is necessarily required to be on the employer's premises, on duty or at

a prescribed workplace."  *Id.* (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690–

91 (1946)).  "Applying these expansive definitions, the Court found compensable the time spent

traveling between mine portals and underground work areas, and the time spent walking from

timeclocks to work benches."  *Id.* (citations omitted).

When these decisions threatened the "financial ruin of many employers" and

"unreasonably increased" the "cost to the Government" of services, 29 U.S.C. § 251(a),

Congress enacted the Portal-to-Portal Act of 1947 to overrule these prior decisions and to

"distinguish[] between activities that are essentially part of the ingress and egress process, on the

one hand, and activities that constitute the actual 'work of consequence performed for an employer,' on the other hand." *Integrity Staffing*, 574 U.S. at 38 (Sotomayor, J., concurring) (quoting 29 C.F.R. § 790.8(a)); *Akpeneye v. United States*, 138 Fed. Cl. 512, 526 (2018) (*Akpeneye I*) (same).  The Portal-to-Portal Act's plain language, its implementing regulations, and clearly established caselaw specifically carve out FLSA liability for activities that—although they are "performed for, and under the direction of, the employer," *Akpeneye I*, 138 Fed. Cl. at 526—are "preliminary [or] postliminary," including travel "to and from the actual place of performance," 29 U.S.C. § 254.

Pursuant to the Portal-to-Portal Act, "no employer shall be subject to any liability or punishment under the Fair Labor Standards Act . . . on account of the failure of such employer to pay an employee" for "activities which are preliminary or postliminary to the employee's principal activity or activities," which "occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."  29 U.S.C. § 254(a).

 In other words, activities performed before or after an employee's shift are not compensable if those activities "are preliminary to or postliminary to [the employee's] principal activity or activities." *See Integrity Staffing*, 574 U.S. at 32 (citing 29 U.S.C. § 254(a)).  The Supreme Court has clarified that this rule does not include activities that are "integral and indispensable" to "the productive work that the employee is employed to perform." *Id.* at 36.  "[A]n activity is integral and indispensable to the principal activities that an employee is employed to perform—and thus compensable under the FLSA—if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id.* at 37.

The Office of Personnel Management (OPM), which promulgates binding regulations for

Federal employees such as plaintiffs, *Akpeneye I*, 138 Fed. Cl. at 525 (citing 29 U.S.C. § 204(f)), has promulgated FLSA regulations that mirror the *Integrity Staffing* holding.  The regulations require an agency to credit time spent in preparatory or concluding activities as work only if that "agency reasonably determines that [such] activity is closely related to an employee's principal activities, and is *indispensable to the performance of the principal activities*, *and* that the total time spent in that activity is *more than 10 minutes per workday* . . . ."  5 C.F.R. § 551.412(a)(1) (emphasis added); *accord* 5 C.F.R. § 550.112(b)(1)(i).  "As an administering agency, OPM's interpretation of the statute is entitled to great deference."  *Riggs v. United States*, 21 Cl. Ct. 664, 683 (1990) (citing *Udall v. Tallman*, 380 U.S. 1, 16 (1965)).

Pursuant to these regulations, "[e]ven if employees are performing otherwise compensable work, they are not entitled to overtime compensation for preshift or postshift activities that require a de minimis amount of time."  *Akpeneye v. United States*, 146 Fed. Cl. 356, 365 (2019) (*Akpeneye II*) (citing *Anderson*, 328 U.S. at 692).  Although "the period that is normally regarded as the cut-off for *de minimis* overtime is 10 minutes, that number has not been treated as a rigid maximum."  *Carlsen v. United States*, 521 F.3d 1371, 1380 (Fed. Cir. 2008).  "Indeed, activities that require even more time can still be de minimis depending on 'the practical administrative difficulty of recording additional time, the aggregate amount of compensable time, and the regularity of the work.'"  *Akpeneye II,* 146 Fed. Cl. at 365 (quoting *Carlsen v. United States*, 521 F.3d at 1380).

Thus, for plaintiffs' FLSA claim to survive this motion to dismiss, plaintiffs must plausibly allege that their pre- and post-shift activities are integral and indispensable to their principal activities and that time they spent performing any such compensable work per day is greater than the 10-minute *de minimis* threshold.  As demonstrated below, plaintiffs have not done so, and therefore, their complaint must be dismissed.

**B.  Plaintiffs' Claim for Overtime Compensation For Pre- And Post-Shift Activities Fails As A Matter Of Law**

Plaintiffs allege that their "primary job duty is to maintain the safety and security of the Institution, staff and inmates." *Id.* ¶ 9.  This allegation fails to establish a "principal activity" as a matter of law because "safety and security" are not specific activities—much less "principal activities," as required.  In *Integrity Staffing*, the Supreme Court considered an FLSA case brought by warehouse workers who sought compensation for the time it took them to undergo a required post-shift security screening to ensure that they were not stealing the products they were handling.  574 U.S. at 29–30.  Plaintiffs' argument, mapped onto *Integrity Staffing*, would emphasize that the purpose of the screenings and the purpose of the warehouse workers was the same:  to maximize Amazon's profits (by minimizing theft and by moving products along the supply chain).  Abiding by plaintiffs' logic, therefore, the Court should have concluded that the *Integrity Staffing* employees' screening time was compensable.

However, the Supreme Court unanimously held the precise opposite.  The Court rejected the plaintiffs' claims, explaining that the facts that the activity was "required" and that it was done for the "benefit of the employer" were insufficient for it to be considered compensable work.  *Id.* at 36.  Rather, "an activity is not integral and indispensable to an employee's principal activities unless it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform those activities."  *Id.* at 35.  Importantly, the Supreme Court defined the "principal activities" of the warehouse workers in terms of their *actual and literal activities*:  the employer "did not employ its workers to undergo security screenings, but *to retrieve products from warehouse shelves and package those products for shipment to Amazon customers*."  *Id.* (emphasis added).  Then, the Court held that "[t]he screenings were not an intrinsic element of retrieving products from warehouse shelves or packaging them for shipment" such that the defendant "could have eliminated the screenings altogether without impairing the

7

employees' ability to complete their work." *Id.* As a result, *Integrity Staffing* makes clear that "principal activities" must be defined not by the general purpose for which the employees were hired, but by the employees' actual and literal activities.

This Court likewise rejected an attempt to conflate employees' "principal activities" with the generalized purpose for which those employees were hired in *Whalen v. United States*, 93 Fed. Cl. 579 (2010). In that case, air traffic controllers employed by the Federal Aviation Administration at the High Desert Terminal Radar Approach Control ("TRACON") in Edwards Air Force Base ("Edwards AFB") sought compensation for "time spent in security inspections at the entrance and exit gates to Edwards AFB." *Id.* at 583. The *Whalen* plaintiffs similarly argued that "the security procedures in place at Edwards AFB" shared the same goals as their work: namely "to ensure that TRACON is free from any potential threats that may interrupt air traffic" and "to ensure the safety of the skies." *Id.* at 600 (internal quotation marks omitted). This Court, however, rejected that argument because "the security inspections . . . apply to everyone who enters and exits Edwards AFB, whether to work at TRACON or elsewhere, or merely to visit persons who live on base," and thus "are an extension of plaintiffs' commute," which renders them "not compensable under the Portal–to–Portal Act." *Id.* As a result, this Court held that "[t]he security activities for which plaintiffs seek compensation, although necessary for them to travel to TRACON, are not integral and indispensable to their principal activities as air traffic controllers . . . ." *Id.* at 600.

The Court should follow the Supreme Court's and its own reasoning and reject plaintiffs' legally untenable argument that "safety and security" are the "principal activities" of correctional officers. A decision to the contrary would allow the "integral and indispensable" designation to defeat the entire purpose of the Portal-to-Portal Act because one could, as a general matter, characterize almost all preliminary and postliminary activities as serving the same generalized

purpose as the employee's principal activity.  For example, a correctional officer's ensuring his shoes are securely tied and extinguishing cigarettes before heading to his post would undoubtedly serve the purpose of "safety and security"—but that does not render the act of tying shoes tightly and extinguishing cigarettes "integral and indispensable" to the officer's principal activities.

To derive the plaintiffs' "principal activities," the Court should instead consider the alleged *activities* through which plaintiffs pursue their goal of "safety and security."  Plaintiffs allegedly pursue "safety and security" by "maintaining constant vigilance to ensure that nothing out of the ordinary is occurring, immediately addressing any safety or security issues . . . ." Compl. ¶ 9.  With this framework in mind, we address whether plaintiffs have plausibly alleged that each of the pre- and post-shift activities is necessary to the principal *activity* plaintiffs are paid to do, *i.e.* maintaining constant vigilance.

Plaintiffs allege that they are entitled to overtime compensation for the time it takes to pass through a COVID-19 screening and a security screening, collect and return equipment, walk to and from their post, and exchange information before or after their shift.  *See* Compl. ¶¶ 21– 33.  However, plaintiffs fail to plausibly allege that any of these activities are both an intrinsic element of maintaining constant vigilance and take more than a *de minimis* amount of time.[1]

### 1. <u>COVID-19 Screening</u>

Plaintiffs allege that, "[s]ince the start of the COVID-19 pandemic in March 2020" they start "working upon entering the front lobby, where they are immediately stopped and required

---

[1] Crucially, plaintiffs have not alleged how long each of the alleged work activities takes. This is problematic because, if the Court considers some of the alleged activities to be "work" and others to not be compensable "work," the Court has no way to assess whether the *de minimis* doctrine applies. To the extent the Court decides that these specific facts are necessary to determine whether plaintiffs have stated a claim under the FLSA, plaintiffs' failure to allege them is grounds for dismissal. *See Iqbal*, 556 U.S. at 678.

to participate in a health screening before continuing on to the metal detector and screening site."
*Id.* ¶ 24.  "The health screening consists of, among other things, a temperature check and a
written questionnaire regarding their health status and symptoms."  *Id.*  Although plaintiffs assert
that this screening is "integral and indispensable to the plaintiffs' principal activities," *id.*
"[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a
claim."  *Bradley*, 136 F.3d at 1322.  Moreover, the integral and indispensable test cannot "be
satisfied merely by the fact that an employer required an activity."  *Integrity Staffing*, 574 U.S. at
36.

The purpose of this screening, as plaintiffs point out, is to ensure "that the highly
contagious novel coronavirus does not enter the Institution and infect inmates or staff."  Compl.
¶ 24.  Plaintiffs contend that this serves the nebulous goal of "safety and security," but "safety
and security" do not constitute plaintiffs' "principal activity" for the reasons discussed above.
This Court and the Supreme Court define employees' "principal activities" based on the
employees' literal and actual activities.  *See Integrity Staffing*, 574 U.S. at 35 (holding that the
workers' principal activity was to "retrieve products from warehouse shelves and package those
products for shipment to Amazon customers"); *Whalen*, 93 Fed. Cl. at 600 (rejecting employees'
argument that the "security procedures" were integral merely because they shared the same
purpose "to ensure the safety of the skies").  Without the conflation of "principal activities" with
abstract general purposes, it becomes clear that plaintiffs have not plausibly alleged that their
being screened for the virus is "integral and indispensable" to plaintiffs' principal activity of
maintaining constant vigilance, Compl. ¶ 9.

The fact that plaintiffs help keep the facility safe by maintaining constant vigilance does
not make every aspect of facility safety part of their principal activities.  Plaintiffs are screened
in an effort to prevent them from spreading the coronavirus, which is not an obligation specific

10

to any particular entity or employer, but to society as a whole.   In response to the coronavirus pandemic many institutions, businesses, and other places where people assemble have implemented health screening procedures that were previously uncommon.  Plaintiffs fail to provide any allegations demonstrating that COVID-19 screenings are intrinsic to their positions as correctional officers rather than a practice designed to satisfy a societal obligation that applies to everyone entering the prison.  *See Whalen*, 93 Fed. Cl. at 600–01 (finding that security screening procedure that applied to everyone who entered a military base was not a work activity when employees underwent the screening).

Moreover, COVID-19 screening is a relatively recent activity, starting in March 2020. Compl. ¶ 24.  Yet there are no allegations that the correctional officers' principal activities changed when the COVID-19 protocols were implemented or that they were unable to perform their principal activities before the implementation of COVID-19 screenings.  Because correctional officers performed the same principal activities before and after the implementation of health screenings, undergoing a health screening cannot be an "intrinsic element of the employee's principal activities and one with which the employee cannot dispense if he is to perform his principal activities."  *Integrity Staffing*, 574 U.S. at 28.

Plaintiffs have failed to plausibly allege that undergoing COVID-19 screening is integral and indispensable to their principal activities, and therefore, allegations relating to that screening do not entitle plaintiffs to any FLSA relief.[2]

### 2.  Security Screening

Plaintiffs allege that that "prior to March 2020 and the COVID-19 pandemic, plaintiffs began their unpaid pre-shift work when they started the process of clearing the staff screening

---

[2] Moreover, there are no allegations concerning how long this activity takes plaintiffs, but it would be implausible for it to take more than a *de minimis* amount of time.

site in the lobby of the Institution." Compl. ¶ 21. Although plaintiffs assert that clearing the screening site is "intrinsic, integral and indispensable to the plaintiffs' principal activities," *id.,* "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley*, 136 F.3d at 1322. Moreover, the integral and indispensable test cannot "be satisfied merely by the fact that an employer required an activity." *Integrity Staffing*, 574 U.S. at 36.

The purpose of this screening, as plaintiffs point out, is to ensure "that no contraband enters the Institution." Compl. ¶ 21. Plaintiffs contend that their being screened serves the same nebulous goal of "safety and security" that they pursue, but "safety and security" do not constitute a "principal activity" for the reasons discussed above. Rather, this Court and the Supreme Court define the employees' "principal activities" based on the employees' literal and actual activities. *See Integrity Staffing*, 574 U.S. at 35 (holding that the workers' principal activity was to "retrieve products from warehouse shelves and package those products for shipment to Amazon customers"); *Whalen*, 93 Fed. Cl. at 600 (rejecting employees' argument that the "security procedures" were integral because they shared the same purpose "to ensure the safety of the skies"). Without the conflation of "principal activities" with abstract general purposes, it becomes clear that plaintiffs have not plausibly alleged that their being screened is "integral and indispensable" to plaintiffs' principal activity of maintaining constant vigilance, Compl. ¶ 9. Put another way, the fact that plaintiffs help keep the facility safe by undertaking certain tasks does not make every aspect of facility safety part of their principal activities.

Moreover, based on the allegations in plaintiffs' complaint, plaintiffs are *being screened*—not *performing* the screening, which is conducted by an on-duty screening officer. As a result, during these screenings, the *activity* of preventing contraband from entering the prison is done by those administering the screening—**not** the plaintiffs who are being screened.

Plaintiffs' assertion that undergoing screening is a principal activity of their jobs necessarily implies that "not bringing contraband into the prison" is the "the productive work that [they are] *employed to perform*." *Integrity Staffing*, 574 U.S. at 36. Such a result would be absurd and not plausible. In other words, plaintiffs do not plausibly allege that they are employed to undergo screenings. *See id.* at 35 ("Integrity Staffing did not employ its workers to undergo security screenings, but to retrieve products from warehouse shelves and package those products for shipment to Amazon customers.").

Additionally, plaintiffs have not alleged that security screening is exclusive to correctional officers entering the institution (nor would such an allegation be plausible). Applying this Court's holding in *Whalen*, the fact that security screening is applicable to all persons entering the facility, not only correctional officers, demonstrates that undergoing screening procedures is not "intrinsic" to the correctional officers' principal activities. *See Whalen*, 93 Fed. Cl. at 600–01 (because the security screening procedure applied to everyone who entered a military base, it was not compensable work when employees underwent the screening).

Plaintiffs will likely ask the Court to adopt the Tenth Circuit's holding in *Aguilar v. Management & Training Corporation*, 948 F.3d 1270, 1279 (10th Cir. 2020) (concluding that "an officer cannot safely and effectively maintain 'custody and discipline of inmates' and 'provid[e] security' while also bringing weapons or contraband into the prison."). This decision, of course, is not binding on the Court and is also not persuasive authority. The U.S. District Court for the Northern District of Ohio correctly concluded that it "improperly applies *Busk* [*Integrity Staffing*]." *Henderson v. Cuyahoga Cnty.*, 1:20-cv-1351, 2020 WL 5706415, *3 (N.D. Ohio Sept. 24, 2020). "[U]nder *Busk*, the correct analysis is whether the pre-shift screening here is an intrinsic element of the Plaintiff's principal activities and one which the employee cannot

dispense if he is to perform his principal *activities*." *Id.* The district court correctly determined that even if the pre-shift screening relates "to part of the activity Plaintiff performs during his shifts, *i.e.*, searching for contraband, the Plaintiff could still perform his job effectively if the pre-shift screenings were eliminated." *Id.*

As in *Integrity Staffing*, *Whalen*, and *Henderson*, the security screening at issue in this case is "merely part of the ingress process Congress deemed to be preliminary," and, therefore, the time spent on it is not compensable. *Henderson*, 2020 WL 5706415, *3. For similar reasons, the Federal Labor Relations Authority (FLRA) has determined that undergoing security screening in a prison is not compensable work. *See, e.g.*, *USP Terre Haute & AFGE Local 720*, 58 F.L.R.A. 327 (2003). Plaintiffs have failed to allege facts that, if proven, would establish that undergoing security screening is integral and indispensable to their principal activities, and therefore, allegations relating to that screening do not entitle plaintiffs to any FLSA relief.[3]

### 3.   Donning The Duty Belt, Chains, And Chits

Plaintiffs allege that, after clearing the staff screening site, they "collect and don their duty belts" along with metal chains and chits. Compl. ¶ 22. Although plaintiffs assert that doing so is "integral and indispensable to the plaintiffs' principal activities," *id.* ¶ 23, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley*, 136 F.3d at 1322.

The purpose of donning the belt, chains, and chits is to ensure plaintiffs' "keys and other equipment can be affixed to their person and secured from the reach of inmates" and so that "they can access necessary equipment in the Institution . . . ." Compl. ¶ 23. However, plaintiffs do not allege that they receive the keys they affix to their belt or the equipment they exchange for

---

[3] Moreover, there are no allegations concerning how long this activity takes plaintiffs, but it would be implausible for it to take more than a *de minimis* amount of time.

chits immediately after screening.  Thus, plaintiffs have not demonstrated that donning the belt before they receive their keys and equipment at their post or at the Control Center, *id.* ¶ 25, would serve any purpose—much less that it would be "integral and indispensable" to their principal activity of maintaining vigilance.  For this reason, and in the wake of *Integrity Staffing*, the FLRA has concluded that officers' choosing to don their duty belts immediately after screening were not engaging in a compensable "integral and indispensable" activity.  *See, e.g.*, *FCI Bastrop & AFGE Local 3828*, 69 F.L.R.A. 176, 181 (Jan. 27, 2016) ("donning duty belts would not be compensable under the *Integrity Staffing* standard as the Agency does not require . . . . that they don them immediately after they undergo screening").

Plaintiffs have failed to plausibly allege facts that, if proven, would establish that donning their duty belts, chains, and chits immediately after screening is integral and indispensable to their principal activities, and therefore, allegations relating to that activity do not entitle plaintiffs to any FLSA relief.[4]

### 4.  Clearing Sally Port And Slider Gate And Flipping Their Accountability Chit

Plaintiffs allege that, after clearing the staff screening site, they walk through a sally port, wherein they flip their accountability chit, and then walk through another gate.  Compl. ¶ 26. Although plaintiffs assert that doing so is "integral and indispensable to the plaintiffs' principal activities," *id.*, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim."  *Bradley*, 136 F.3d at 1322.

The purpose of flipping the accountability chit is to ensure "that the employees in the Control Center and management know exactly who is inside the Institution at all times."  Compl. ¶ 26.  Plaintiffs contend that this serves the same nebulous goal of "safety and security" they

---

[4] Moreover, there are no allegations concerning how long this activity takes plaintiffs, but it would be implausible for it to take more than a *de minimis* amount of time.

pursue, but "safety and security" do not constitute a "principal activity" for the reasons discussed above.  Rather, this Court and the Supreme Court define the employees' "principal activities" based on the employees' literal and actual activities.  *See Integrity Staffing*, 574 U.S. at 35; *Whalen*, 93 Fed. Cl. at 600.  Without the conflation of "principal activities" with abstract general purposes, it becomes clear that plaintiffs have not plausibly alleged that their flipping an accountability chit is "integral and indispensable" to plaintiffs' principal activity of maintaining constant vigilance, Compl. ¶ 9.

For this reason, the FLRA has consistently held that officers' flipping their accountability chit were not engaging in a compensable "integral and indispensable" activity.  *See, e.g.*, *FCI Bastrop & AFGE Local 3828*, 69 F.L.R.A. 176, 181 (Jan. 27, 2016) ("the Arbitrator's conclusion that flipping an accountability chit is an integral and indispensable preparatory or concluding activity is contrary to Authority precedent"); *USP Terre Haute & AFGE Local 720*, 58 F.L.R.A. 327 (2003).  In *Terre Haute*, the FLRA held that employees' "moving a marker on the accountability board in the administrator's office" to show that they were inside the institution is not compensable.  *Id.* at 330.  The FLRA reasoned that this activity is analogous to "checking in" with the agency, and the legislative history of the Portal-to-Portal Act, "specifically includes '[c]hecking in or out' as non-compensable activities."  *Id.* (quoting S. Rep. No. 48, 80th Cong., 1st Sess., at 47 (1947)).  Importantly, the FLRA admonished the "[a]rbitrator's reliance on the nature of the institution as a correctional facility" because "even where security reasons require controlled access to a work site, time spent traveling to and from the place of performance of principal activities is not compensable."  *Id*.

The complaint contains no allegations suggesting that this Court should come to a different conclusion regarding the accountability chit here.  Because plaintiffs have failed to plausibly allege any facts that, if proven, would establish that flipping the accountability chit is

integral and indispensable to their principal activities, allegations relating to that activity do not entitle plaintiffs to any FLSA relief.[5]  Plaintiffs also fail to plausibly allege that passing through doors and gates on the way to their posts is "integral and indispensable" for the reasons discussed in Section II.B.5, below.

### 5.  <u>Walking To Plaintiffs' Duty Posts</u>

Plaintiffs allege that, after flipping their accountability chit, they walk to their posts. Compl. ¶ 27.  Although plaintiffs assert that doing so is "integral and indispensable to the plaintiffs' principal activities," *id.*, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim."  *Bradley*, 136 F.3d at 1322.

Binding authority holds that such transit time is not compensable.  As the Supreme Court observed, "walking from a time clock near the factory gate to a workstation is certainly necessary for employees to begin their work," yet it is "indisputable that the Portal-to-Portal Act evinces Congress' intent to repudiate *Anderson*'s holding that such walking time was compensable under the FLSA."  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 40–41 (2005); *see also Integrity Staffing*, 574 U.S. at 36.  The Portal-to-Portal Act specifically provides that "no employer shall be subject to any liability or punishment under the Fair Labor Standards Act . . . on account of the failure of such employer to pay an employee" for "any of the following activities":  "walking . . . to and from the actual place of performance of the principal activity or activities which the employee is employed to perform . . . ."  29 U.S.C. § 254(a)(1).

This Court has consistently applied the Portal-to-Portal Act to hold that an employee's commute to and from his place of business does not amount to compensable work time.  For example, in *Whalen*, this Court held that the time spent by employees going through screening

---

[5] Moreover, there are no allegations concerning how long this activity takes plaintiffs, but it would be implausible for it to take more than a *de minimis* amount of time.

upon entering and departing Edwards Air Force, as well as the travel time to their jobsite from that screening was not compensable as work. 93 Fed. Cl. at 601. The Court found that the continuous workday began when the plaintiffs arrived at their specific jobsite within Edwards Air Force Base and ended upon their departure from that job site. Similarly, in this case, plaintiffs' workday begins upon their arrival at their assigned post (the jobsite for their regular shift) and ends when they leave their assigned post at the end of their regular shift.

Authority supporting this proposition is legion. *See, e.g.*, 29 C.F.R. § 790.7(f) ("Examples of walking, riding, or traveling which may be performed outside the workday and would normally be considered 'preliminary' or 'postliminary' activities are (1) walking or riding by an employee between the plant gate and the employee's lathe, workbench or other actual place of performance of his principal activity or activities . . . ."); *Bonilla v. Baker Concrete Constr., Inc*., 487 F.3d 1340, 1343 (11th Cir. 2007) (holding that riding on employer-provided transportation to a secure construction site and going through security was not compensable holding that "pass" through a security checkpoint to the tarmac of an airport was not compensable); *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 592 (2d Cir. 2007) (holding that a check-in process at a nuclear power station involving "[b]adge inspection at the entrance" was not compensable); *Corman v. JWS of N.M., Inc.*, 356 F. Supp. 3d 1148, 1182 (D.N.M. 2018) ("The Portal-to-Portal Act excludes from compensation certain preliminary and postliminary activities, like pre-shift walking"); *Mertz v. Wisc. Dep't of Workforce Dev.*, 365 Wis. 2d 607, 2015 WL 6181046, at *4 (Wis. App. 2015) (per curiam) (holding that a corrections officer's time spent walking to his post was not compensable).

Attempting to escape the result compelled by the Portal-to-Portal Act, plaintiffs proffer two additional allegations regarding their travel. As demonstrated below, however, these allegations likewise fail to establish plaintiffs' right to relief under the FLSA for this transit time.

First, plaintiffs allege that they stop by the lieutenant's office, where they "check in with a supervisor and discuss any pertinent information from the previous tour."  Compl. ¶ 27.  However, plaintiffs do not allege that they are *required* to stop by the lieutenant's office prior to their shift—much less any facts showing why this is a task "with which the employee cannot dispense if he is to perform his principal activities," *Integrity Staffing*, 574 U.S. at 33.  Pursuant to the Portal-to-Portal Act, courts have uniformly concluded that checking into and out of the workplace is not compensable.  *See, e.g.*, *Mertz*, 2015 WL 6181046, at *6–7, *10 (holding that a correctional facility's "check-in procedure" that "requires officers to report for check-in prior to arriving at the officer's post so that the supervisor can verify that the officer is present, in uniform, and not impaired" was a non-compensable "preliminary" activity).  Indeed, Department of Labor regulations explain that "checking in and out and waiting in line to do so" are non-compensable preliminary or postliminary activities.  *See* 29 C.F.R § 790.7(g).

Second, plaintiffs allege that "while walking to their posts," they "observe and correct inmate behavior, respond to inmate questions, check for security breaches . . . , check for contraband, run to locations where body alarms sound, and respond to other emergencies as they arise."  Compl. ¶ 27.  However, the complaint contains no allegations showing that these activities add any time to their commute, nor allegations showing that plaintiffs could not seek overtime compensation in the event that they spent any extra time beyond their commute.  Without those allegations, plaintiffs are merely seeking compensation for staying alert "while walking to their posts."  *Id.*  Yet, courts have consistently held that the mere fact that employees are required to remain alert and respond to emergencies does not transform non-compensable time into compensable time.

For example, in *Akpeneye I*, 138 Fed. Cl. 512, this Court held that security officers at the Pentagon were not entitled to compensation for time spent on breaks even though they were

required to remain vigilant and respond to emergencies if they arose.  *Id.* at 529.  This Court

observed that Pentagon officers "must remain vigilant and be in a state of readiness prepared to

address any contingencies or emergencies that arise," *id.* at 521, while on break but nevertheless

held that these requirements "do not transform a noncompensable . . . period into compensable

time." *Id.* at 529.

Similarly, in *Babcock v. Butler County*, 806 F.3d 153 (3d Cir. 2015), corrections officers

were required to remain on premises during breaks and had to "remain in uniform, in close

proximity to emergency response equipment, and on call to respond to emergencies," such that

"if an emergency or unexpected situation ar[ose], the officer must respond immediately in

person, in uniform, and with appropriate response equipment." *Id.* at 155.  The Third Circuit

held that these requirements did not transform non-compensable time into compensable time.  *Id.*

at 158.  Notably, in reasoning that is arguably binding, the Court of Claims explained that the

"mere fact" that an employee was required to be on the "employer's premises and to be on a duty

status, subject to emergency call during such period" did not "convert" otherwise non-

compensable time "into compensable time." *Baylor v. United States*, 198 Ct. Cl. 331, 364

(1972). [6]   Many other cases hold that merely requiring an employee in a security-related position

to be alert and on call to respond to emergencies (including emergencies announced by devices

similar to body alarms) does not transform non-compensable time into compensable time. [7]

---

[6] *See Bankers Tr. N.Y. Corp. v. United States*, 225 F.3d 1368, 1373 (Fed. Cir. 2000)
("Court of Claims cases, until overturned by this court en banc, are binding precedent").
Although the Court of Claims' reasoning in this case is instructive, its main holdings have been
superseded by amendments that extended the Portal-to-Portal Act to Federal employees, the
OPM's implementing regulations, and subsequent caselaw.  *See Baylor*, 198 Ct. Cl. at 337 ("the
Portal-to-Portal Act . . . is not relevant as to Federal employees").

[7] *See, e.g., Allen v. Atl. Richfield Co.*, 724 F.2d 1131, 1134–37 (5th Cir. 1984) (holding
that requirement that security guards respond to emergencies when they arose did not transform
their off-duty time into compensable time); *Roy v. County of Lexington*, 141 F.3d 533, 546 (4th
Cir. 1998) (EMS personnel's break time was not compensable even though they were required to

Plaintiffs' claim resembles the claims that were rejected in each of these cases.  In each of these cases, employees in security-related positions (such as corrections officers, Pentagon security officers, hospital employees, police detectives, and EMS personnel) were required to remain alert and respond to emergencies during otherwise non-compensable time spent on the employer's premises.  In each case, the employees argued that they should be compensated because they had to remain alert and respond to emergencies if they arose during non-compensable time, as plaintiffs claim in this case.  Yet, in each case, the court concluded that the time was not rendered compensable merely because the employees were required to remain alert and respond to emergencies.

For these reasons, the post-*Integrity Staffing* FLRA decisions hold that correctional officers' transit to their posts is not compensable.  *See, e.g.*, *USP Atwater & AFGE Local 1242*, 68 F.L.R.A. 857, 860 (Aug. 27, 2015) ("the Arbitrator's conclusion—that the officers' travel in the main corridor to reach their duty posts is compensable—is contrary to law" because "the mere possibility that the officers could be called upon to perform a principal duty while traveling is not sufficient, by itself, to make the travel here compensable under the Act").  The complaint

---

respond to emergencies and their breaks were interrupted by emergency calls 27 percent of the time); *Barefield v. Vill. of Winnetka*, 81 F.3d 704, 710 (7th Cir. 1996) (police employees "had to remain in the police department building or in radio contact with the building" in case of an emergency, but their time was not compensable); *Henson v. Pulaski Cnty. Sheriff*, 6 F.3d 531,536 (8th Cir. 1993) (police officers' meal breaks were not compensable even though officers would "monitor . . . their radios for emergency calls to return to service"); *Agner v. United States*, 8 Cl. Ct. 635, 638 (1985) (security officers at the Library of Congress were required to respond to "emergency cal[s]" during non-compensable time spent on their employer's premises); *Joiner v. Bd. of Trs. of Flavius J. Witham Mem. Hosp.*, No. 1:13-CV-555-WL-DKL, 2014 WL 3543481, at *6 (S.D. Ind. July 17, 2014) (hospital maintenance specialists "were expected . . . to respond to emergencies" but their time was not compensable); *Haviland v. Cath. Health Initiatives-Iowa, Corp.*, 729 F. Supp. 2d 1038, 1059–60 (S.D. Iowa 2010) (hospital employees "were required to keep their radios on and respond to [emergency] situations that may arise," but their time was not compensable); *Harris v. Boston*, 253 F. Supp. 2d 136, 145 (D. Mass. 2003) (a police detective had to "remain on call" during lunch and "terminate his lunch period altogether if an emergency arises," but his time was not compensable).

contains no allegations suggesting that this Court should come to a different conclusion regarding the commute alleged by plaintiffs.[8]

### 6.  Equipment and Information Exchange

Plaintiffs allege that once they arrive at their post they "exchange equipment" and perform an "information exchange with the outgoing correctional officer about any security events that occurred during the previous shift . . . ."  Compl. ¶ 28.  Through this process, the incoming officer allegedly learns "about significant security incidents" that occurred during "the prior shift and about inmates who may need specific monitoring during the shift . . . ."  *Id.*

However, the complaint contains no allegations regarding the amount of time that this exchange will take, or otherwise establishing that it will exceed the 10-minute *de minimis* threshold on any given day.  *See, e.g.*, *Bishop v. United States*, 74 Fed. Cl. 144, 148 (2006) ("The controlling regulation, 5 C.F.R. § 550.112(b)(1)(i), implies that an agency is not obligated to pay overtime when the work takes ten minutes or less.").  By way of background, this Court has previously determined "that on an ordinary day it would take no more than five minutes to exchange keys and a radio for chits with another lieutenant, to count the keys, and discuss any important information relating to the previous shift."[9]  *Bishop*, 74 Fed. Cl. at 153.

Moreover, although "it is true that the period that is normally regarded as the cut-off for *de minimis* overtime is 10 minutes, that number has *not been treated as a rigid maximum*." *Carlsen*, 521 F.3d at 1380–81 (citing 5 C.F.R. § 550.112(b)(1)(i)) (emphasis added).  As a result, "amounts greater than 10 minutes have been regarded as *de minimis* depending on the

---

[8] Moreover, without any factual allegations regarding the distances and times it takes plaintiffs to walk to their duty posts, it is impossible to assess whether walking to and from the duty posts would be a *de minimis* activity.  As a result, plaintiffs fail to adequately allege facts showing that the *de minimis* doctrine would not apply.

[9] Although the plaintiffs in *Bishop* were lieutenants, and thus not covered under the FLSA, the case addressed many of the same factual issues.

circumstances, such as the practical administrative difficulty of recording additional time, the aggregate amount of compensable time, and the regularity of the work." *Id.* The Federal Circuit provided the example of a case in which the Ninth Circuit held that although "the employees alleged that they had worked between 5 and 15 minutes of overtime per day," the amount was *de minimis* because "the average amount of work was 7 to 8 minutes per day and that keeping track of the exact amounts of overtime under the circumstances would have been administratively burdensome." *Id.* (citing *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984)).

Thus, even if the exchange of information occasionally required more than 10 minutes, this time would still be *de minimis* because these equipment and information exchanges would be administratively difficult to measure. *See Carlsen*, 72 Fed. Cl. at 799. "Someone would have to measure the amount of time between the end of the outgoing [plaintiff's] shift and the end of the exchange of information and equipment, subtracting any time the [plaintiffs] spent discussing anything other than work." *Id.* "The measurement would have to be daily, because the length of the exchange varies by day." *Id.* The time-recording system would also have to account for the fact that some shift transfers would not involve the alleged exchange of information.[10] Accordingly, "[t]he inefficiency and administrative difficulty of isolating and recording this time is apparent." *Carlsen*, 72 Fed. Cl. at 799.

Plaintiffs have not alleged what kind of post each of them staff or how much the exchange of information varies from day to day. Without these allegations, the Court is unable to determine whether plaintiffs are entitled to compensation for this time, or whether any such

---

[10] Plaintiffs allege that "[m]ost of the posts are staffed for 16 or 24 hours per day, although some are staffed for only 8 hours per day." Compl. ¶ 10. A plaintiff staffing an 8-hour post, of course, does not exchange information before or after his or her shift. "For a 16-hour post, there are two 8-hour paid shifts daily." *Id.* ¶ 12. A plaintiff staffing the first 8 hour shift for a 16-hour post would similarly not exchange information before his or her shift, and a plaintiff staffing the second shift would not exchange information after the shift.

time is *de minimis*.  Because these specific facts are necessary to determine whether plaintiffs

have stated a claim under the FLSA, plaintiffs' failure to allege them is grounds for dismissal.

*Iqbal*, 556 U.S. at 678.

### 7.   <u>Walking To The Exit Of The Institution</u>

Plaintiffs allege that their post-shift activities include "exchanging information and

equipment on the assigned post with oncoming staff" and walking from their posts towards the

entrance of the institution, subject to the same responsibilities as their walk to their post.  Compl.

¶ 31.

These allegations fail to state a claim for the same reasons addressed in Section II.B.5

and II.B.6, above.  As with the pre-shift exchange of information, there no allegations regarding

the amount of time that this post-shift exchange will take, or otherwise establishing that it will

exceed the 10-minute *de minimis* threshold on any given day.  *See, e.g.*, *Bishop*, 74 Fed. Cl. at

148.  Likewise, "[t]he inefficiency and administrative difficulty of isolating and recording" the

time for the exchange of information remain "apparent."  *Carlsen*, 72 Fed. Cl. at 799.

As this Court previously held in a decision affirmed by the Federal Circuit, "walking out

of the institution after a shift is not an 'integral and indispensable part of the principal activities'

. . . and thus not compensable overtime."  *Bishop*, 74 Fed. Cl. at 148.  The Federal Circuit

specifically approved this Court's holding that post-shift "walking time to the Control Center did

not constitute overtime work" because at that time the plaintiff "had already relinquished his

equipment and duties to his replacement."  *Carlsen*, 521 F.3d at 1380.  The complaint contains

no allegations suggesting that this Court should come to a different conclusion regarding the

alleged post-shift activities.

*          *          *

Because plaintiffs have failed to plausibly allege the existence of any compensable work

in excess of the 8 hour and 10 minute *de minimis* threshold, plaintiffs' FLSA claim fails.

## III.    Plaintiffs Fail to State a Claim for Relief Under the Back Pay Act

Plaintiffs assert that "pursuant to the Back Pay Act, 5 U.S.C. § 5596, [they] are entitled to recover interest" for their FLSA claim.  Compl. ¶ 46.  However, plaintiffs' right to relief under the Backpay Act fails because plaintiffs' FLSA claims do not survive.  It is well-established that "[t]he Back Pay Act is merely derivative in application; it is not itself a jurisdictional statute."  *United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983) (citing *Montalvo v. United States*, 231 Ct. Cl. 980, 982 (1982)); *see also Refaei v. United States*, 129 Fed. Cl. 1, 23 (2016), *aff'd*, 725 F. App'x 945 (Fed. Cir. 2018) ("The Back Pay Act is not itself a jurisdictional statute. It is merely derivative in application, depending on a prior finding of appropriate jurisdiction in the Claims Court." (internal quotation marks omitted)).  Therefore, "[u]nless some other provision of law commands payment of money to the employee for the unjustified or unwarranted personnel action, the Back Pay Act is inapplicable."  *Spagnola v. Stockman*, 732 F.2d 908, 912 (Fed. Cir. 1984) (internal quotation marks omitted).  Without the FLSA claim, there is no "other provision of law," *id.*, in the complaint that plaintiffs can rely on as a predicate for BPA relief.

Accordingly, plaintiffs fail to establish their entitlement to a remedy under the BPA.

## IV.    The Court Cannot As a Matter of Law Grant the Declaratory Relief Plaintiffs Request

Plaintiffs appear to seek a "declaratory judgment" under 28 U.S.C. §§ 2201 and 2202, Compl. ¶ 1, asking the court to "[e]nter judgment declaring that the defendant has willfully and wrongfully violated its statutory obligations," *id.* at 16.

Plaintiffs' request for relief under the Declaratory Judgment Act, 28 U.S.C §§ 2201–2202, fails because this Court does not have jurisdiction to grant relief under the Declaratory Judgment Act.  *See United States v. King*, 395 U.S. 1, 5 (1969) (holding that the Declaratory Judgment Act does not vest the Court of Claims with the authority to issue declaratory relief); *Ghaffari v. United*

*States*, 125 Fed. Cl. 665, 667 (2016) ("28 U.S.C. § 2202 expands on the authority granted in § 2201 . . . long-standing precedent establishes this court lacks jurisdiction to act under them . . . Any claims based on 28 U.S.C. §§ 2201 or 2202 are dismissed for lack of jurisdiction.").

## <u>CONCLUSION</u>

For the foregoing reasons, we respectfully request that the Court grant the defendant's motion and dismiss plaintiff's complaint.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

<u>/s/ Reginald T. Blades, Jr.</u>
REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:                                          <u>/s/ Bret R. Vallacher</u>

JAMES SELLARS                                        BRET R. VALLACHER
Assistant General Counsel                            Trial Attorney
U.S. Department of Justice                           Commercial Litigation Branch
Federal Bureau of Prisons                            Civil Division
Employment Law Branch                                U.S. Department of Justice
3800 Camp Creek Parkway                              P.O. Box 480
Bldg 2000                                            Ben Franklin Station
Atlanta, GA 30331                                    Washington, D.C. 20044
                                                     Tel:  (202) 616-0465
                                                     Fax: (202) 305-2062
                                                     Email:  bret.r.vallacher@usdoj.gov

March 1, 2021                                        Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and accurate copy of the foregoing document, including all attachments and exhibits, was served on the following counsel for plaintiffs via electronic filing on this 1st day of March, 2021:

Molly A. Elkin
McGillivary Steele Elkin LLP
1101 Vermont Avenue, N.W.
Suite 1000
Washington, D.C. 20005
(202) 833-8855

<u>/s/ Bret R. Vallacher</u>
BRET R. VALLACHER